IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Janet Lorene Steele, | ) | C/A No.: 1:15-2595-RMG-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a
Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a)
(D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to
obtain judicial review of the final decision of the Commissioner of Social Security
("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and
Supplemental Security Income ("SSI"). The two issues before the court are whether the
Commissioner's findings of fact are supported by substantial evidence and whether she
applied the proper legal standards. For the reasons that follow, the undersigned
recommends that the Commissioner's decision be affirmed.

I.     Relevant Background

       A.     Procedural History

       On February 22, 2012, Plaintiff protectively filed applications for DIB and SSI, in
which she alleged her disability began on November 29, 2010. Tr. at 82, 83, 168–74, and
175–80. Her applications were denied initially and upon reconsideration. Tr. at 117–21,

124–25, and 126–27. On November 19, 2013, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Richard L. Vogel. Tr. at 35–57 (Hr'g Tr.). The ALJ issued an unfavorable decision on January 22, 2014, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 15–34. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–6. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on June 29, 2015. [ECF No. 1].

     B.     Plaintiff's Background and Medical History

          1.     Background

Plaintiff was 43 years old at the time of the hearing. Tr. at 38. She completed high school. Tr. at 39. Her past relevant work ("PRW") was as a customer service manager, a cashier, and a salad bar attendant. Tr. at 40 and 41. She alleges she has been unable to work since November 29, 2010. Tr. at 39.

          2.     Medical History

Plaintiff presented to Lawrence Comerford, M.D. ("Dr. Comerford"), for evaluation of chronic diarrhea on January 28, 2009. Tr. at 281–83. Dr. Comerford recommended Plaintiff obtain a colonoscopy, an esophagogastroduodenoscopy ("EGD"), and blood work. Tr. at 283.

On November 2, 2009, Plaintiff presented to Ranjini Pillai, M.D. ("Dr. Pillai"), to follow up on diagnostic test results. Tr. at 383. She reported occasional blackouts, lightheadedness, headaches, and nausea. *Id.* Dr. Pillai observed Plaintiff to have

kyphoscoliosis in her thoracic spine, flexion deformity of her lumbar curvature, posterior tenderness, paravertebral muscle spasm, and bilateral thoracic and lumbosacral tenderness. Tr. at 385. He assessed syncope and collapse, benign hypertension, and headache, but released Plaintiff to full-time work. *Id.*

On December 9, 2009, Paul L. Yantis, III, M.D., performed an upper endoscopy and dilation that showed Plaintiff to have a Schatzki's ring, a hiatal hernia, Grade C erosive esophagitis, and diffuse gastric erythema with shallow erosions. Tr. at 285 and 286. He dilated the Schatzki's ring, took biopsies in Plaintiff's stomach and esophagus, and prescribed Protonix. Tr. at 285.

On December 21, 2009, Plaintiff presented to Josepha Nolan, M.D. ("Dr. Nolan"), with complaints of headaches and pain in her shoulders and throughout her back. Tr. at 290. Dr. Nolan observed Plaintiff to be tender in her cervical and lumbar paraspinous musculature. Tr. at 290–91. Plaintiff endorsed increased pain with range of motion ("ROM") of her head and neck. *Id.* Dr. Nolan administered cervical and lumbar facet injections. Tr. at 291–92.

On January 5, 2010, reported positive results from her last injection. Tr. at 285. Dr. Nolan administered cervical facet injections and referred Plaintiff for a transcutaneous electrical nerve stimulation ("TENS") unit. *Id.*

Plaintiff followed up with Dr. Pillai for hypertension on February 9, 2010. Tr. at 387. She complained of stress-induced chest pain and pain in her neck and right knee. Tr. at 387 and 388. Dr. Pillai observed tenderness in Plaintiff's cervical spine and swelling in

her right knee. Tr. at 389. He indicated Plaintiff ambulated with a limp and had limited right knee ROM. Tr. at 389–90.

Plaintiff presented to Dr. Pillai for hypertension, pain in her left lower leg, and knots under her arm on March 24, 2010. Tr. at 395. Dr. Pillai performed a comprehensive orthopedic examination and found Plaintiff to have swelling in her left knee and tenderness in her left calf, but no other abnormalities. Tr. at 397–98.

Plaintiff presented to the emergency room ("ER") at East Cooper Medical Center ("ECMC") on March 6, 2010, with a complaint of pain in her lower left leg that radiated from her knee to her calf. Tr. at 372. An ultrasound was negative for deep venous thrombosis. Tr. at 375. Plaintiff again presented to ECMC on March 12, 2010, with complaints of nausea, vomiting, and diarrhea, but an x-ray of her abdomen was normal. Tr. at 312.

On June 11, 2010, Plaintiff endorsed pain in her neck and bilateral shoulders, wrists, hands, and ankles. Tr. at 399. She stated her pain was aggravated by activity, turning her neck, standing, and rising from a seated position. *Id.* She also reported migraine headaches. Tr. at 400. Dr. Pillai noted no abnormalities on examination. Tr. at 401.

Plaintiff presented to the ER at ECMC on June 29, 2010, complaining of severe headaches, sweating, and low blood pressure. Tr. at 331. She reported feeling better after she received intravenous fluids. Tr. at 330.

On September 9, 2010, Plaintiff presented to Dr. Pillai with a stiff neck. Tr. at 407. Dr. Pillai observed Plaintiff to be tender to palpation of her neck and to complain of pain

4

with movement. Tr. at 409. He diagnosed a cervical strain, prescribed Skelaxin, and instructed Plaintiff to apply ice to her neck and to follow up in two weeks if her neck pain failed to improve. Tr. at 410.

On October 5, 2010, Plaintiff presented to the ER at ECMC with left knee pain that had gradually worsened over the prior two days. Tr. at 332. A musculoskeletal examination was positive for decreased ROM, pain, and tenderness. Tr. at 347. The attending physician indicated an impression of internal derangement of the knee and prescribed Naprosyn and Vicodin. Tr. at 348.

Plaintiff again complained of neck pain on October 13, 2010. Tr. at 412. Dr. Pillai observed Plaintiff to have tenderness to palpation of her neck, reduced left lateral motion, and stiffness. Tr. at 414. He referred Plaintiff to the Spine Institute. Tr. at 415.

Plaintiff presented to the Medical University of South Carolina ("MUSC") for right hand pain on January 23, 2011, after her son grabbed her and pushed her against a wall. Tr. at 294. The attending physician diagnosed hand trauma and hematoma, applied a hand splint, and advised Plaintiff to take Ibuprofen or Tylenol. Tr. at 295.

On March 1, 2011, Plaintiff complained to Dr. Pillai of intermittent dizziness associated with headaches and a bruised right forearm. Tr. at 417. Dr. Pillai observed no abnormalities on physical examination. Tr. at 418–19. He instructed Plaintiff to continue taking Norco with Phenergan to treat migraines and to rest, ice, and elevate her forearm. Tr. at 419.

On May 24, 2011, Plaintiff complained to Dr. Pillai of fatigue and weight gain. Tr. at 425. She reported muscle and back pain. *Id.* Dr. Pillai noted no abnormalities on

physical examination. Tr. at 427. He discontinued Plaintiff's prescription for Seasonale, ordered blood work, and instructed her to return to the clinic in three weeks. *Id.*

Plaintiff followed up with Dr. Pillai on June 14, 2011, and continued to complain of fatigue. Tr. at 429. Dr. Pillai indicated Plaintiff's physical examination was normal. Tr. at 431–32. He prescribed Pravachol and a Vitamin B12 injection. Tr. at 432. Plaintiff denied fatigue during a follow up visit on September 16, 2011. Tr. at 433.

Plaintiff presented to the ER at ECMC on August 19, 2011, after she injured her finger when she tripped over her dog. Tr. at 338. The attending physician diagnosed a fracture to Plaintiff's right ring finger. *Id.* Plaintiff next presented to ECMC with a cough on September 18, 2011. Tr. at 341. She was diagnosed with asthmatic bronchitis. *Id.*

On November 10, 2011, Plaintiff complained to Dr. Pillai of muscle pain, after having sustained a fall. Tr. at 437. She also reported a three-week history of headaches. Tr. at 439. Dr. Pillai observed Plaintiff to be tender in her cervical spine and right shoulder and to have scoliosis and severe pain with motion of her lumbar spine. Tr. at 439. He prescribed Flexeril and Naprosyn and instructed Plaintiff to follow up in two weeks. Tr. at 440.

On November 16, 2011, Plaintiff reported to ECMC and reported a weeklong history of swelling in her feet. Tr. at 344. The attending physician observed Plaintiff to have 2+ edema, but indicated no other abnormalities. Tr. at 345.

Plaintiff followed up with Dr. Pillai for the swelling in her feet on December 7, 2011. Tr. at 441. She indicated the swelling was exacerbated by passive movement and prolonged sitting and standing. *Id.* Dr. Pillai indicated Plaintiff was 5' tall and weighed

330 pounds. Tr. at 442. He observed Plaintiff to have cervical spine tenderness, thoracic spine kyphosis, lumbar spine scoliosis, and bilateral 2+ pitting edema. Tr. at 443.

On December 19, 2011, a computed tomography ("CT") scan of Plaintiff's pelvis indicated left-sided nephrolithiasis. Tr. at 483. Dr. Pillai instructed Plaintiff to increase her fluids and to filter her urine. *Id.*

Plaintiff again presented to Dr. Pillai for swelling in her feet on December 27, 2011. Tr. at 445. Dr. Pillai observed tenderness in Plaintiff's thoracic spine and swelling in her bilateral knees, but full ROM and no swelling in her feet or ankles. Tr. at 447. He assessed arthropathy associated with other conditions and prescribed Mobic and Lasix, as needed. *Id.*

On February 3, 2012, Plaintiff reported to Dr. Pillai that she sustained a fall while engaging in a recreational activity. Tr. at 449. She complained of pain in her knee and right shoulder. *Id.* Dr. Pillai observed Plaintiff to ambulate with a right-sided limp; to be tender in her lumbar spine and right shoulder; and to demonstrate swelling in her right knee. Tr. at 451. He assessed impingement with bursitis/tendinitis and olecranon bursitis. Tr. at 452. He prescribed nonsteroidal anti-inflammatory drugs ("NSAIDS") and referred Plaintiff to physical therapy and to an orthopedist. *Id.*

Plaintiff presented to the ER at ECMC on April 17, 2012, with a complaint of chest pain. Tr. at 502. A cardiac monitor revealed no abnormalities (Tr. at 503) and a chest x-ray was normal (Tr. at 517).

Plaintiff complained to Dr. Pillai of daily diarrhea during a visit on April 19, 2012. Tr. at 570. Dr. Pillai prescribed Xifaximin for irritable colon. Tr. at 572.

On April 20, 2012, an x-ray of Plaintiff's lumbar spine indicated mild multilevel degenerative disc disease without evidence for vertebral body fracture of subluxation. Tr. at 491. An x-ray of Plaintiff's right knee showed moderate-to-severe tricompartmental degenerative changes and an intermedullary rod in the distal femur. Tr. at 492. An x-ray of Plaintiff's ankle revealed degenerative changes that were most pronounced in the tibiotalar articulation, as well as calcaneal spurs. Tr. at 493.

Plaintiff presented to Jason Madey, M.D. ("Dr. Madey"), for a consultative examination on April 21, 2012. Tr. at 494–96. She indicated she was most limited by her low back pain, which was aggravated by walking, lifting more than five pounds, standing for long periods, bending, and squatting. Tr. at 494. She stated she had a prescription for Lortab, but that she rarely used it. *Id.* She endorsed recent weight gain and numbness in her low back. *Id.* Dr. Madey described Plaintiff's gait as normal, but slow, secondary to her body habitus. Tr. at 495. He noted Plaintiff was unable to bend or squat. *Id.* Plaintiff had normal mental status, grip strength, motor strength, reflexes, and sensation. *Id.* She demonstrated normal ROM in her ankles, cervical spine, elbows, hips, knees, shoulders, and wrists. Tr. at 497. Her lumbar flexion was reduced from 90 to 60 degrees as a result of her body habitus, but she demonstrated normal lumbar extension and lateral flexion. *Id.* Dr. Madey diagnosed morbid obesity, hypertension, metabolic syndrome, osteoarthritis, and depression. Tr. at 495. He provided the following opinion regarding Plaintiff's functional abilities:

> Based on today's examination and the objective evidence, I believe the claimant should be able to sit for a full work day. Claimant will have difficulty with long periods of walking and/or standing for a full workday

8

> secondary to her obesity. Claimant should be able to carry objects < 10 lbs but tasks that require bending or squatting will be limited secondary to body habitus. Claimant should be able to hold a conversation, respond appropriately to questions, carry out and remember instructions.

Tr. at 496.

State agency consultant Camilla Tezza, Ph. D., reviewed the record and completed a psychiatric review technique form ("PRTF") on May 2, 2012. Tr. at 63–64. She considered Listing 12.04 for affective disorders, but found that Plaintiff's impairment was non-severe because it resulted in no restriction of activities of daily living ("ADLs"); no difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. *Id.* State agency consultant Olin Hamrick, Jr., Ph. D., reviewed the evidence and similarly concluded Plaintiff's mental impairment was non-severe. Tr. at 92–93.

On May 8, 2012, state agency medical consultant Mary Lang, M.D., reviewed the evidence and assessed Plaintiff's physical residual functional capacity ("RFC"). Tr. at 65–67. She indicated Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of three hours; sit for a total of about six hours; frequently push and pull with her right upper and lower extremities; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; frequently handle and finger with the right upper extremity; and should avoid concentrated exposure to extreme heat, humidity, hazards, fumes, odors, dusts, gases, poor ventilation, etc. *Id.* State agency medical consultant Hugh Wilson,

M.D., assessed a similar physical RFC, but found that Plaintiff could frequently balance. Tr. at 94–96.

On May 21, 2012, Plaintiff presented to the ER at ECMC with a complaint of abdominal pain. Tr. at 507. She endorsed difficulty eating, nausea, and vomiting. *Id.* The attending physician noted no abnormalities on physical examination. Tr. at 508. He discharged Plaintiff with a prescription for Phenergan. Tr. at 509. Plaintiff returned to the ER the next day with a complaint of right-sided chest pain. Tr. at 512. A chest x-ray was normal. Tr. at 518. The attending physician diagnosed a chest wall strain. Tr. at 513.

Plaintiff presented to Dr. Pillai on June 18, 2012, with a headache that was accompanied by dizziness, neck stiffness, and visual aura. Tr. at 566. Dr. Pillai observed Plaintiff to have bilateral 1+ pitting edema in her bilateral lower extremities and to be tender to palpation in her lumbar spine. Tr. at 568. He instructed Plaintiff to continue treating her migraines with Lortab and Phenergan and noted that she was unable to use Tryptans or Imitrex because of hypertension. *Id.*

On April 2, 2013, Plaintiff presented to neurologist Marshall A. White, M.D. ("Dr. White"), regarding migraines, back pain, and leg pain. Tr. at 596. She also reported pain in her arms and neck, swelling in her legs, numbness and tingling in her hands and feet, and dizzy spells. Tr. at 598. She indicated she was a full-time student. *Id.* Dr. White noted Plaintiff had cold, purple feet and complained of six headaches per month. Tr. at 596. He prescribed Imitrex. *Id.*

Plaintiff presented to Judith E. Rubano, M.D. ("Dr. Rubano"), to establish treatment on April 8, 2013. Tr. at 575–78. She reported a history of chronic migraines

and back pain. Tr. at 575. She was 5'1" tall and weighed 323 pounds, but indicated she had lost 20 pounds since December 2012. *Id.* She reported that she took Lortab, as needed, for back pain. Tr. at 576. Dr. Rubano prescribed Xanax, Prozac, Lisinopril, and Pravastatin. Tr. at 576–77. She referred Plaintiff for multiple lab tests that were unremarkable. Tr. at 579–87.

On May 13, 2013, Plaintiff indicated Topamax had provided some relief from her headaches. Tr. at 597. Dr. White prescribed Norco and instructed Plaintiff to continue taking Topamax. Tr. at 599.

Plaintiff followed up with Dr. Rubano on May 20, 2013. Tr. at 588–90. She reported a two-day history of headache, head congestion, and fever. Tr. at 588. Dr. Rubano diagnosed sinusitis and prescribed Ceftin. Tr. at 589.

Plaintiff reported her headaches had improved on June 10, 2013. Tr. at 600. She rated her pain as a three to four on a 10-point scale and denied side effects from medications. *Id.* Dr. White refilled Plaintiff's prescription for Norco. Tr. at 600. Plaintiff reported no change in her symptoms on August 5, 2013, and assessed her pain as a four out of 10. Tr. at 601. Dr. White refilled Plaintiff's prescription for Norco. *Id.* On September 30, 2013, Plaintiff complained that her pain medication was less effective and rated her pain as a five out of 10. Tr. at 602. Dr. White prescribed Percocet 10/325 milligrams. *Id.* On October 28, 2013, Plaintiff reported stable chronic pain in her knees and lumbar spine that she assessed as a six out of 10. Tr. at 603.

On November 12, 2013, Dr. Rubano completed a medical opinion questionnaire. Tr. at 593. She indicated Plaintiff would likely "be absent from her job and/or unable to

complete a full 8 hour workday due to her medical condition" on four days per month and checked "Yes" by the following statements:

1.    In view of back pain, leg pain, and headaches that Ms. Steele is currently experiencing, do you feel that she would need to rest and/or take breaks on an unpredictable and unscheduled basis in order to complete a normal 8 hour workday?;

2.    In view of Ms. Steele's depression, chronic pain, and the side effects from her medication, do you feel that she would experience difficulties with attention and concentration which would cause her to be off task for 10% or more of the time during an 8 hour workday?; and

4.[1]    In your opinion, are Ms. Steele's functional limitations as outlined above reasonably consistent with the objective medical findings from her diagnostic tests, as well as from her clinical examinations?

*Id.*

On November 20, 2013, Dr. White completed a similar medical opinion questionnaire. Tr. at 606. He indicated Plaintiff was likely be "absent from her job and/or unable to complete a full 8 hour workday due to her medical condition" on "more than four days per month." *Id.* He also checked the box for "Yes" in response to the following questions:

1.    In view of the chronic back pain, right leg pain, and migraine headaches that Ms. Steele is currently experiencing, do you feel that she would need to rest and/or take breaks on an unpredictable and unscheduled basis in order to complete a normal 8 hour workday?;

2.    In view of the pain and swelling that Ms. Steele is experiencing in her right leg, do you recommend that she elevate her leg occasionally while seated to a 90 degree angle in order to alleviate her symptoms?;

---

[1] The third question concerned Plaintiff's anticipated absences.

3.     In view of Ms. Steele's chronic pain and the side effects from her medication, do you feel that she would experience difficulties with attention and concentration which would cause her to be off task for 10% or more of the time during an 8 hour workday?; and

5.[2]   In your opinion, are Ms. Steele's functional limitations as outlined above reasonably consistent with the objective medical findings from her diagnostic tests, as well as from her clinical examinations?

*Id.*

C.     The Administrative Proceedings

1.     The Administrative Hearing

At the hearing on November 19, 2013, Plaintiff testified that she lived with her parents and her 15-year-old son. Tr. at 38. She indicated she had last worked in November 2010 and received unemployment benefits from April to June 2011. Tr. at 39. She stated she was terminated from her job at Walmart for excessive absenteeism. Tr. at 40. She indicated she was having difficulty standing and had missed work as a result of her health problems. *Id.*

Plaintiff testified that she had been injured in a motor vehicle accident in 1989 that resulted in multiple fractures to her face and right leg and necessitated she undergo reconstructive surgery. Tr. at 41. She indicated she had developed arthritis as a result of her fractures. *Id.* She endorsed migraine headaches as a result of facial fractures and the placement of metal plates in her face. Tr. at 42. Plaintiff testified the migraines occurred from two to three times per week and six to eight times per month, came on unexpectedly, and could last from six hours to three days. Tr. at 42–43. She indicated her

---

[2] The fourth question addressed Plaintiff's anticipated absences.

migraines had caused her to miss work in the past. Tr. at 43. She endorsed chronic pain and muscle spasms in her neck and shoulders. Tr. at 44. She indicated she experienced daily pain in her back that sometimes caused a tingling sensation in her legs. Tr. at 45. She stated she had difficulty bending her right knee, which caused her to drag her leg when she walked. Tr. at 46. She indicated she experienced swelling in her feet every one to two days. Tr. at 46–47. She stated she had chronic diarrhea as a result of diverticulitis. Tr. at 47. She indicated she had experienced kidney stones that required surgical removal. Tr. at 47–48.

Plaintiff testified she could stand for five to ten minutes and walk for ten to fifteen minutes. Tr. at 48. She indicated she was unable to climb stairs. *Id.* She stated she could sit for 15 to 30 minutes. *Id.* She indicated she could lift five pounds. Tr. at 49.

Plaintiff testified she would lie down or apply an ice pack to reduce her pain. Tr. at 50. She indicated she took 10 milligrams of Percocet for pain and Xanax and Prozac for depression and anxiety. Tr. at 55–51. She stated her medication caused her to feel sleepy and groggy.

Plaintiff testified she attended a class at Trident Tech for one hour twice a week. Tr. at 53. She indicated she was also enrolled in online courses, as well. *Id.* She stated she did laundry and prepared meals at a slow pace. Tr. at 54. She indicated she continued to drive. *Id.* She endorsed some difficulty staying asleep as a result of discomfort in her legs. Tr. at 55.

14

      2.     The ALJ's Findings

In his decision dated January 22, 2014, the ALJ made the following findings of fact and conclusions of law:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2.     The claimant has not engaged in substantial gainful activity since November 29, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.     The claimant has the following severe impairments: arthritis, migraine headaches, and obesity (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on May 16, 1970 and was 40 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from November 29, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 20–30.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    the ALJ did not comply with the requirements of SSR 96-8p in analyzing Dr. Madey's opinion;

2)    the ALJ did not adequately assess her RFC:

3)    the ALJ relied on the Medical-Vocational Rules instead of obtaining testimony from a VE; and

4)    the ALJ provided no proof that Plaintiff was capable of performing a significant number of jobs in the national economy.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability

16

claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW;[4] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, §§ 404.1520(a), (b), 416.920(a), (b); Social Security

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, Subpart P, App'x 1, severe enough to prevent all gainful activity. 20 C.F.R. §§ 404.1525, 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or are "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[4] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520(h), 416.920(h).

1:15-cv-02595-RMG     Date Filed 09/15/16     Entry Number 26     Page 18 of 28

Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v.*

*Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

Although Plaintiff presents her argument as four allegations of error, a decision as to the first issue directs findings as to the other three. Therefore, the undersigned has consolidated Plaintiff's allegations of error and considers them collectively.

Plaintiff argues the ALJ did not comply with the provisions of SSR 96-8p because he failed to recognize and explain the discrepancy between his finding that she could perform sedentary work and his decision to accord "great weight" to Dr. Madey's opinion that she could lift less than 10 pounds. [ECF No. 19 at 10]. She maintains the ALJ erred in finding she was capable of performing the full range of sedentary work because the sedentary occupational base was eroded by her inability to carry up to 10 pounds. *Id.* at 11–12. She contends her inability to perform the full range of sedentary work

necessitated that the ALJ consult a VE to determine the impact of the additional limitation on the sedentary occupational base. *Id.* at 12–13. Thus, she argues the ALJ failed to meet his burden to prove her RFC allowed her to perform a significant number of jobs in the national economy because he neglected to cite specific jobs that her limitations would allow her to perform. *Id.* at 13.

The Commissioner argues the ALJ's indication that he gave Dr. Madey's opinion "great weight," as opposed to "controlling weight," provides some explanation for the deviation between the opinion and the assessed RFC. [ECF No. 21 at 11–12]. She maintains the ALJ specifically recognized that Dr. Madey opined that Plaintiff "should be able to lift/carry weights less than 10 pounds." *Id.* at 12. However, she contends the ALJ further noted that Plaintiff's ADLs were comparable to at least sedentary work activities and that he gave some weight to the state agency physicians' opinions that Plaintiff could frequently lift 10 pounds and occasionally lift up to 20 pounds. *Id.* at 12–13. She argues that even if the ALJ erred in failing to provide a more detailed explanation for his deviation from Dr. Madey's opinion in assessing Plaintiff's RFC, his error was harmless in that it had no impact on the decision. *Id.* at 13–16. She maintains a limitation to lifting and carrying less than 10 pounds, as opposed to up to 10 pounds, creates no appreciable erosion of the occupational base at the sedentary exertional level. *Id.* at 14–15. She further contends the ALJ was not required to obtain the services of a VE or identify specific jobs Plaintiff could perform in light of the fact that the limitation did not significantly erode the sedentary occupational base. *Id.* at 15.

"The RFC assessment must include a narrative discussion describing how all the relevant evidence in the case record supports each conclusion and must cite specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." SSR 96-8p (1996). Relevant evidence includes medical history, medical signs and laboratory findings, the effects of treatment, reports of ADLs, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributed to the medically-determinable impairment, evidence from attempts to work, need for structured living environment, and work evaluations. *Id.* "The RFC assessment must always consider and address medical source opinions." *Id.* If the ALJ assesses an RFC that conflicts with a medical source's opinion, the ALJ must explain why the medical source's opinion was not adopted. *Id.*

If the assessed RFC does not allow the claimant to perform her PRW, the ALJ must determine if the claimant can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1). To that end, he should consider the claimant's RFC in combination with her age, education, and work experience. *Id.* To support a finding that the claimant is not disabled, the ALJ must provide evidence that other work exists in significant numbers in the national economy that the claimant can perform, given her RFC and vocational factors. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant has only strength limitations, the ALJ may use the Medical-Vocational Rules to support a finding that she is either "disabled" or "not disabled." 20 CFR Part 404, Subpart P, App'x 2, § 200.00.

The Medical-Vocational Rules for sedentary work represent the existence of approximately 200 unskilled, sedentary occupations. SSR 96-9p. "The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools." SSR 96-9p. For a Medical-Vocational Rule to be applicable, the claimant should be able to perform the full range of unskilled, sedentary occupations. *Id.* "Where any one of the findings of fact does not coincide with the corresponding criterion of a rule in Table No. 1 . . . the rule does not direct a decision." *Id.*

ALJs are advised to consult VEs "where an individual's exertional RFC does not coincide with the full range of sedentary work." SSR 83-12; *see also Landrum v. Astrue*, No. 08-2678-TLW-JRM, 2010 WL 558599, at *7 (D.S.C. Feb. 10, 2010) ("When a claimant: (1) suffers from a nonexertional impairment that restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional limitation which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the Grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant."), citing *Walker*, 889 F.2d at 49; *Hammond v. Heckler*, 765 F.2d 424, 425–26 (4th Cir. 1985); *Cook v. Chater*, 901 F. Supp. 971 (D.Md. 1995). A VE "can assess the effect of any limitation on the range of work at issue (e.g., the potential occupational base); advise whether the impaired person's RFC permits him or her to perform substantial numbers of occupations within the range of work at issue; identify jobs which are within the RFC, if

they exist; and provide a statement of the incidence of such jobs in the region in which the person lives or in several regions of the country." *Id.*

Here, the ALJ found Plaintiff capable of performing the full range of sedentary work. Tr. at 23. He stated he gave no weight to Dr. Rubano's opinion because Plaintiff presented to her on only two occasions; her records did not indicate she treated Plaintiff for the conditions she stated were disabling; her objective findings did not support the limitations she alleged; and her statement was inconsistent with the other evidence of record. Tr. at 28. He explained that he gave only some weight to Dr. White's statement because his records showed improvement in Plaintiff's pain and failed to corroborate the disabling limitations he alleged and his opinion was inconsistent with the other evidence of record. *Id.* The ALJ indicated he gave some weight to the state agency medical consultants' findings that Plaintiff could perform light work with occasional postural restrictions, but further reduced Plaintiff's RFC to sedentary "in consideration of the combined functional limitations caused by her physical impairments." Tr. at 27. He stated he gave significant weight to the state agency psychological consultants' opinions that Plaintiff's mental impairments were non-severe. *Id.* He assigned "[g]reat weight" to Dr. Madey's opinion that Plaintiff would have difficulty with long periods of walking or standing and activities that required bending or squatting, but that she could sit for a full workday, "lift/carry weights less than 10 pounds," "hold conversations, respond appropriately to questions," and remember and carry out instructions. *Id.* He concluded "the evidence recounts and supports a wide range of activities that would be comparable to at least sedentary exertional work activities." *Id.* The ALJ found Plaintiff was

incapable of performing her PRW because it "required excessive standing and walking activities." Tr. at 29. After considering Plaintiff's age, education, work experience, and residual functional capacity for a full range of sedentary work, the ALJ determined a decision of "not disabled" was directed by Medical-Vocational Rule 201.28. *Id.*

In *Tanner v. Commissioner of Social Sec.*, 602 F. App'x 95, 100 (4th Cir. 2015) (per curiam), the court found the ALJ's failure to expressly assign weight to a medical source's opinion to be harmless error because it was "clear from the ALJ's RFC assessment that he accepted most of" the physician's findings. The court stated "reversing the ALJ's decision solely because he failed to assign weight" to the physician's opinion "would be pointless" because the RFC assessment and the physician's opinion were "largely consistent" and it was "highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of non-disability." *Tanner*, 602 F. App'x at 101.

In light of the Fourth Circuit's finding that the ALJ adequately considered the medical opinion in *Tanner*, the undersigned recommends the court find the ALJ properly considered Dr. Madey's opinion in assessing Plaintiff's RFC. This ALJ, unlike the ALJ in *Tanner*, specified that he gave "great weight" to Dr. Madey's opinion. Tr. at 27. However, he assessed an RFC that deviated from Dr. Madey's opinion in that it allowed Plaintiff to lift up to 10 pounds, whereas Dr. Madey specified that Plaintiff could lift less than 10 pounds. *Compare* Tr. at 23 (finding Plaintiff had the RFC to perform the full range of sedentary work) *with* Tr. at 496 (concluding Plaintiff was capable of sitting for a full work day, carrying objects that weighed less than 10 pounds, holding a conversation,

responding appropriately to questions, and remembering and carrying out instructions, but would have difficulty with long periods of walking or standing, bending, and squatting). Despite this deviation, a review of the record reveals that the ALJ adopted all of Dr. Madey's findings, except the one. Although Plaintiff argues that a significant difference exists between the assessed RFC and Dr. Madey's opinion because Dr. Madey did not indicate she was capable of lifting only slightly less than 10 pounds [ECF No. 24 at 2–3], the undersigned finds this argument unpersuasive.[5] The difference between the ALJ's RFC finding and Dr. Madey's opinion is negligible—making the two generally consistent. *See Tanner*, 602 F. App'x at 101. While it would be most helpful to the court if the ALJ had recognized and explained his reasons for finding that Plaintiff had the ability to lift slightly more than Dr. Madey specified, remanding the case for such an explanation is unlikely to change the ALJ's decision in light of his explanation for the RFC finding. *See id.*

While the ALJ gave "great weight" to Dr. Madey's opinion, he did not indicate he adopted the opinion in its entirety. He specified that he also gave "some weight" to Dr. White's statement and the state agency medical consultants' findings and "significant weight" to the state agency psychological consultants' opinions. *See* Tr. at 27–28. The ALJ explained that consideration of Plaintiff's ADLs and the evidence as a whole suggested she was capable of performing work at the sedentary exertional level. *See* Tr.

---

[5] If it was Dr. Madey's impression that Plaintiff was only capable of lifting a few pounds, he not would have indicated "< 10 lbs.," but would have instead specified that Plaintiff could only lift "one to two pounds" or "less than five pounds." It follows that a finding that Plaintiff could lift nine pounds, 15 ounces would not conflict with Dr. Madey's opinion that she could lift less than 10 pounds.

at 28. In light of the ALJ's consideration of the medical opinions of record and the evidence as a whole, the undersigned recommends the court find he complied with the provisions of SSR 96-8p in assessing Plaintiff's RFC.

Having found Plaintiff was capable of performing the full range of sedentary work, the ALJ appropriately applied Medical-Vocational Rule 201.28. *See* 20 CFR Part 404, Subpart P, App'x 2, § 201.28 (directing a finding of "not disabled" for claimants with a maximum sustained work capability limited to sedentary work that meet the following criteria: younger individuals aged 18–44; high school education or more; and history of skilled or semiskilled work, without transferable skills); *see also* 20 CFR Part 404, Subpart P, App'x 2, § 200.00. He met his burden to show that Plaintiff could perform a significant number of jobs that existed in the national economy by relying on the approximately 200 jobs that are represented at the sedentary, unskilled level. *See* SSR 96-9p. Because the ALJ found Plaintiff was capable of performing the full range of sedentary work, the sedentary occupational base was not eroded, and it was unnecessary for the ALJ to solicit the services of a VE to identify specific jobs that could be performed by an individual with Plaintiff's RFC.[6]  *See id.*

---

[6] It is unnecessary for the court to address whether a limitation to lifting less than 10 pounds erodes the sedentary occupational base, renders Medical-Vocational Rule 201.28 inapplicable, and requires the ALJ to obtain testimony from a VE to prove that jobs exist in significant numbers. Nevertheless, the undersigned notes that Dr. Madey's opinion suggested a situation in which the erosion of the occupational base would be negligible, allowing Medical-Vocational Rule 201.28 to be applied without consultation with a VE. *See* SSR 96-9p ("For example, if it can be determined that the individual has an ability to lift or carry slightly less than 10 pounds, with no other limitations or restrictions in the ability to perform the requirements of sedentary work, the unskilled sedentary occupational base would not be significantly eroded . . . ).

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether her decision is supported as a matter of fact and law. Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

September 15, 2016                          Shiva V. Hodges
Columbia, South Carolina                   United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).