## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Janet Lorene Steele, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 1:15-2595-RMG |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
|     Defendant. ) | |
| ) | |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge. The Magistrate Judge issued a Report and Recommendation ("R & R") on September 15, 2016, recommending that the Commissioner's decision be affirmed. (Dkt. No. 26). Plaintiff timely filed objections to the R & R and the Defendant filed a reply. (Dkt. Nos. 28, 29). For reasons set forth below, the Court reverses the decision of the Commissioner and remands to the matter to the agency for further action consistent with this order.

### Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances substituting the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1527(b). Known popularly as the "Treating Physician Rule," the regulation requires the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and

may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh *all* medical opinions (treating physicians, consulting examiners, and non-examining chart reviewers) in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, support for the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 1996 WL 374188, at *5 (S.S.A. July 2, 1996). Further, "if the RFC assessment conflicts with an opinion of any medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8P, 1996 WL 374184, at *7 (S.S.A. July 2, 1996).

The rules and regulations of the Social Security Administration place considerable importance on the claimant's capacity for physical exertion in making a disability determination. Exertion levels include a capacity for "very heavy work," "heavy work," "medium work," "light work," and "sedentary work." 20 C.F.R. § 404.1567. It is well settled that a residual functional capacity "for less than a full range of sedentary work reflects serious limitations" requires "an individualized determination" that considers the impact of the limitations or restrictions on the total number of jobs the particular claimant can perform. 20 C.F.R., Pt. 404, Subpt. P, App. 2 §

200.00(g)(3); SSR 96-9P, 1996 WL 374185 at *1 (S.S.A. July 2, 1996). Where the limitation involves the capacity to lift or carry weights, "consultation with a vocational resource may be appropriate." SSR 96-9P, 1996 WL 374185, at *6. Sedentary work requires the capacity to lift ten pounds, and the inability to lift that threshold amount may erode the occupational base for sedentary work. *Id.*

## Discussion

The claimant in this matter, who was 43 at the time of the administrative decision and is now 46 years of age, was found by the Administrative Law Judge (ALJ) to have various severe impairments, including arthritis, migraines, and obesity. Tr. 20. The ALJ found that despite these severe limitations, Plaintiff retained the capacity to perform the full range of sedentary work. Tr. 23. In reaching this conclusion, the ALJ gave limited weight to the opinions of the claimant's board-certified treating neurologist and pain medicine specialist, Dr. Marshall White, who opined that the claimant's "chronic back pain, right leg pain, and migraine headaches" would require her to take unexpected and unscheduled work breaks to complete a normal eight hour workday. Tr. 28, 606. Dr. White also opined that Plaintiff's medical conditions would result in four or more work absences per month. *Id.* Another treating physician, Dr. Judith Rubano, a board-certified internist affiliated with the Medical University of South Carolina, reached similar conclusions. Tr. 588. The ALJ gave "little weight" to Dr. Rubano's opinions.

The ALJ gave "some weight" to the opinions of two non-examining and non-treating physicians, Dr. Mary Lang and Dr. Hugh Wilson, who found that Plaintiff had the capacity to lift ten pounds regularly and twenty pounds occasionally. Tr. 27, 65, 108. These chart reviewing experts provided no basis in the record for their findings regarding Plaintiff's capacity to lift.

-4-

Plaintiff underwent a consultative evaluation by Dr. Jason Madey, a board-certified neurologist. He noted that Plaintiff's pain symptoms were aggravated when she lifted more than five pounds and concluded that she "should be able to carry objects [less than] 10 lbs." Tr. 494, 496. This opinion regarding Plaintiff's capacity to lift markedly varied from the opinions offered by the chart reviewers. Dr. Madey also opined that Plaintiff "should be able to sit for a full work day" but would have "difficulty with long periods of walking and/or standing." Tr. 496.

The ALJ stated that he gave "great weight" to Dr. Madey's opinions and concluded that Plaintiff retained the RFC "to perform the full range of sedentary work." Tr. 23. On appeal, Plaintiff objects to the finding that she is capable of performing a full range of sedentary work because the only opinion credited by the ALJ regarding Plaintiff's lifting capacity, Dr. Medey, did not find that Plaintiff had the capacity to lift ten pounds. The Commissioner argues on appeal that while the ALJ did not note the discrepancy between the minimal findings for sedentary work and Dr. Madey's statement, Plaintiff cannot demonstrate that the ALJ's opinion would have changed the outcome. In recommending the Commissioner's decision be affirmed, the Magistrate Judge stated that Dr. Madey's opinion implied that the claimant could lift approximately ten pounds. Dkt. No. 26 at 25.

It is important to note at the outset that claimants limited to the full range of sedentary work have significant, even profound, work related limitations that significantly erode their occupational base. A claimant unable to perform the full range of sedentary work may have even greater job-related limitations in the marketplace. It is common practice for administrative law judges to call upon the services of a vocational expert where a claimant has capacity less than the

full range of sedentary work to determine the degree to which the claimant's limitations have eroded the occupational base. In such circumstances, the vocational expert is often requested to consider and weigh a number of factors, including the claimant's weight lifting capacity and whether the claimant's medical-related absences might render him or her disabled. Therefore, this dispute is not a battle over semantics, but a critical inquiry into whether a claimant's specific limitations fall below the full range of sedentary work, and if so, whether the occupational base is so eroded that the Plaintiff is disabled.

The Court finds several legal errors regarding the Commissioner's decision which mandate reversal and remand to the agency. First, the ALJ erred by failing to note the discrepancy between Dr. Madey's opinion regarding Plaintiff's lifting capacity and the minimal requirements for a full range of sedentary work and to make a specific finding regarding Plaintiff's weight lifting capacity. This was not a small oversight. If the ALJ intended to adopt Dr. Maney's opinion, he would need initially to determine Dr. Maney's opinion regarding Plaintiff's precise weight lifting capacity. The ALJ would also have to explain how that number was determined. If the ALJ intended to make a determination that Plaintiff had the capacity to lift ten pounds (and thus retained the capacity to perform the full range of sedentary work) despite Dr. Maney's opinion to the contrary, he would need to explain why he rejected the expert's opinion. At present, the ALJ's decision contains critical gaps that this Court cannot ignore or speculate what the findings of the ALJ might be.[1]

---

[1] Dr. Madey's statement that Plaintiff's lifting capacity is less than ten pounds provides no specific weight limitation. Dr. Madey's office record documents a single weight lifting capacity: five pounds. Tr. 494. This is exactly the same weight limit Plaintiff testified to under oath at her administrative hearing. Tr. 49. On a matter as important in this case as the Plaintiff's lifting capacity, the Court is unwilling to speculate that when Dr. Madey stated less than ten

Second, when a claimant does not have the capacity to meet the requirements of the full range of sedentary work (which would appear to be Dr. Madey's opinion regarding the claimant in this case), the ALJ is obligated to determine whether there are existing jobs in the market place available to the claimant in light of those limitations. The ALJ made no individualized determination regarding Plaintiff's occupational base in light of her specific limitations.

Third, the ALJ's decision failed to weigh the opinions of each of the medical experts in light of the standards of the Treating Physician Rule. This creates the anomalous result that the treating physicians, who each asserted that the claimant lacked the capacity to perform consistently over an eight hour day and regular work week, had their opinions disregarded and that those experts with minimal or no contact with the Plaintiff had their opinions given the greatest weight. While that can certainly occur with the proper application of the standards of the Treating Physician Rule, it is notable that the opinions of Dr. Madey and the chart reviewers were not weighed by the ALJ under the standards of the Treating Physician Rule. *See* 20 C.F.R. § 404.1527(e)(1)(ii).[2] On remand, the opinions of *each* expert witness must be weighed utilizing the standards of the Treating Physician Rule.

---

pounds he actually meant the equivalent of ten pounds.

[2] The ALJ indicated that the treating physicians' medical records did not support their opinions regarding Plaintiff's capacity to work an eight hour day. On remand, the ALJ should consider contacting these treating physicians for further details to support their opinions since the Commissioner promises under the Treating Physician Rule to provide considerable weight and deference to the opinions of a claimant's treating physicians. 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to your treating sources . . ."); *id.* § 416.920b(c)(1) ("We may recontact your treating physician . . ."). When contacting the treating physicians, the ALJ might wish to inquire whether they have opinions concerning Plaintiff's weight lifting capacity. Dr. White, in particular, as a treating physician specializing in pain management, may have the greatest insight on this question.

## Conclusion

Based on the foregoing, the decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the agency for further action consistent with this order pursuant to Sentence Four of 42 U.S.C. 405(g).[3]

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

Charleston, South Carolina
October 26, 2016

---

[3] In light of the fact that Plaintiff is now 46 years of age, the Commissioner on remand should consider her application in light of the standards set forth in 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(h)(1) (regarding applications of claimants between 45-49 years old).